**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

BRUCE MILLER,

    Plaintiff,

   v.

M.D.C. HOLDINGS, INC.,
LARRY A. MIZEL,
DAVID D. MANDARICH,
RAYMOND T. BAKER,
MICHAEL A. BERMAN,
DAVID E. BLACKFORD,
HERBERT T. BUCHWALD,
RAFAY FAROOQUI,
COURTNEY L. MIZEL,
PARIS G. REECE III,
DAVID SIEGEL, and
JANICE SINDEN,

    Defendants.

---

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND**

---

Plaintiff Bruce Miller ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against M.D.C. Holdings, Inc. ("MDC" or the "Company") and the members of MDC's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection

with the Board's attempt to sell MDC to Sekisui House, Ltd. ("Guarantor") (the "Proposed Transaction").

2.      On January 17, 2024, MDC, SH Residential Holdings, LLC ("Parent"), Parent's wholly owned subsidiary, Clear Line, Inc. ("Merger Sub"), and, solely for the purposes of Sections 6.2, 6.17 and 9.15, Guarantor, entered into an Agreement and Plan of Merger (the "Merger Agreement").  Parent and Merger Sub are entities that are affiliated with Guarantor.  Pursuant to the terms of the Merger Agreement, each share of MDC common stock will be converted into the right to receive $63.00 in cash.

3.      On March 4, 2024, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that MDC stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) MDC's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Vestra Advisors LLC ("Vestra"); (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by Company insiders.

4.      The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as MDC stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5.      The special meeting for MDC stockholders to vote on the Proposed Transaction is currently scheduled for April 2, 2024.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and MDC's other shareholders to make an informed decision

whether to vote their shares in favor of the Proposed Transaction.  Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.    Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  MDC's principal executive offices are located in this District, rendering venue in this District appropriate.

## THE PARTIES

9.    Plaintiff is, and has been at all relevant times, the owner of shares of MDC common stock.

10.    Defendant MDC is a Delaware corporation, with its principal executive offices located at 4350 South Monaco Street, Suite 500, Denver, Colorado 80237.  MDC's shares trade on the New York Stock Exchange under the ticker symbol "MDC."

11.    Defendant Larry A. Mizel ("Mizel") is the Company's founder and has been Executive Chairman of the Board and a director of the Company at all relevant times.  Defendant Mizel previously served as Chief Executive Officer ("CEO") of the Company from 1972 until

October 2020. Defendant Mizel and defendant David D. Mandarich ("Mandarich") collectively own approximately 21.2% of the Company's common stock.

12. Defendant Mandarich has been President, CEO, and a director of the Company at all relevant times.

13. Defendant Raymond T. Baker has been a director of the Company at all relevant times.

14. Defendant Michael A. Berman has been a director of the Company at all relevant times.

15. Defendant David E. Blackford has been a director of the Company at all relevant times.

16. Defendant Herbert T. Buchwald has been a director of the Company at all relevant times.

17. Defendant Rafay Farooqui has been a director of the Company at all relevant times.

18. Defendant Courtney L. Mizel has been a director of the Company at all relevant times.

19. Defendant Paris G. Reece III has been a director of the Company at all relevant times and previously served as the Company's Chief Financial Officer and Principal Accounting Officer until 2008.

20. Defendant David Siegel has been a director of the Company at all relevant times.

21. Defendant Janice Sinden has been a director of the Company at all relevant times.

22. Defendants identified in paragraphs 12-21 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23.    The Company has two primary operations, homebuilding and financial services. The Company's homebuilding operations consist of wholly owned subsidiary companies that generally purchase finished lots or develop lots to the extent necessary for the construction and sale primarily of single-family detached homes to first-time and first-time move-up homebuyers under the name "Richmond American Homes."  MDC's financial services operations consist of (i) HomeAmerican Mortgage Corporation, which originates mortgage loans primarily for the Company's homebuyers, (ii) Allegiant Insurance Company, Inc., A Risk Retention Group ("Allegiant"), which provides insurance coverage primarily to the Company's homebuilding subsidiaries on homes that have been delivered and most of MDC's subcontractors for completed work on those delivered homes, (iii) StarAmerican Insurance Ltd., which is a re-insurer of Allegiant claims, (iv) American Home Insurance Agency, Inc., which offers third-party insurance products to MDC's homebuyers, and (v) American Home Title and Escrow Company, which provides title agency services to MDC's homebuilding subsidiaries and customers in certain states.

**The Proposed Transaction**

24.    On January 18, 2024, MDC announced the Proposed Transaction, stating, in relevant part:

> OSAKA and DENVER, Jan. 18, 2024 – Sekisui House, Ltd. ("Sekisui House") (TSE:1928), a top-tier house manufacturer in Japan having delivered over 2.62 million homes worldwide since its establishment, and M.D.C. Holdings, Inc. ("MDC") (NYSE: MDC), one of the leading homebuilders in the U.S. delivering high-quality homes over the past 50 years, announced today a definitive agreement pursuant to which a wholly-owned subsidiary of Sekisui House will acquire MDC in an all-cash transaction with an equity value of US\$4.9 billion (approximately JPY 688 billion at a JPY:USD conversion rate of 140:1). Subject to and in accordance with the terms and conditions of the agreement, MDC shareholders will receive US\$63.00 per share in cash, which represents an approximately 19%

premium to MDC's closing stock price on January 17, 2024, the last trading day prior to announcing the transaction, and an approximately 41% premium to MDC's 90-day volume-weighted average trading price.

By leveraging Sekisui House technologies and cutting-edge building practices cultivated in Japan, MDC expects to deliver higher quality houses that enhance its position in the key states in which it operates. Through the transaction, MDC will accelerate Sekisui House's Global Vision to "make home the happiest place in the world" by joining the Sekisui House family of brands that includes Woodside Homes, Holt Homes, Chesmar Homes and Hubble Homes. Upon closing, Sekisui House will become the fifth largest housebuilder in the U.S. (based on the number of houses closed in 2022), helping Sekisui House to achieve its target of supplying 10,000 homes outside of Japan by FY2025, sooner than anticipated.

Yoshihiro Nakai, Representative Director of the Board President, Executive Officer and CEO of Sekisui House, stated, "This exciting acquisition of MDC represents a significant advancement of the Sekisui House strategy to expand our U.S. presence and bring the value of our technology, innovation and philosophies to U.S. homebuilding and ultimately to our customers. It will also allow us to achieve our goal of supplying 10,000 homes outside of Japan by FY2025, ahead of our initial expectations. This transaction directly aligns with our stated strategy for growth in North America and will create a more resilient portfolio for Sekisui House."

Toru Tsuji, CEO of SH Residential Holdings, LLC and Executive Officer of Sekisui House, stated, "Demand for quality homes in the U.S. market remains high and MDC will expand our ability to serve customers in key U.S. states that are poised for continued growth. Through our Global Vision to 'make home the happiest place in the world,' we are leveraging Sekisui House technologies to increase the opportunity for customers in the U.S. to purchase quality, environmentally sound homes that they can cherish forever. We look forward to welcoming MDC's management and employees to the Sekisui House team who will be integral to our continued growth and success."

Larry Mizel, Founder & Executive Chairman of MDC, stated, "Over the past half-century, our unwavering commitment to excellence has been the cornerstone of our success, benefiting customers, employees, business partners and shareholders. In our remarkable journey, marked by the construction of over 240,000 homes, we've emerged as a top 10 homebuilder in the United States. Our ability to navigate through varying housing market cycles while maintaining business resilience speaks to our strategic prowess, and has led not only to the creation of significant shareholder value, but also to an industry-leading dividend yield for our shareholders. Our strategic decision to merge with Sekisui House is a testament to our focus on maximizing shareholder value and delivering significant cash proceeds for our shareholders. Sekisui House's technology and processes are well-regarded, and we look forward to partnering with a company that shares our belief

in delivering customers with high-quality homes and a streamlined, comprehensive homebuying experience."

David Mandarich, President, CEO and Director of MDC, stated, "MDC, through our Richmond American Homes brand, has been trusted by customers for decades. As part of Sekisui House's U.S. family of brands, we expect new opportunities for growth across our footprint for our team members and within our customer offering. We thank all of our team members across the organization for their hard work that made this transaction possible and will position the combined company as a leading homebuilder. Sekisui House and its brands are well respected with a reputation for quality, and we look forward to becoming an important part of the portfolio."

**Significant Benefits of the Acquisition**

- **Creates the fifth largest homebuilder in the U.S. to deliver on growing demand for single-family homes.** Demand in the U.S. for new homes is expected to continue to grow as its population grows. Sekisui House will bring to MDC a fully integrated value chain of insights, design, manufacturing, marketing, sales and after-sales services to support efficiency and enhance the homebuyer experience. MDC will help Sekisui House meet growing U.S. housing needs with enhanced capacity to deliver single-family houses and support customers' increasingly diversified demands – from breaking ground to choosing the specification and finishes in their new homes.

- **Strengthens relationships with trade partners by expanding Sekisui House technologies cultivated in Japan throughout the U.S.** Sekisui House has advanced technology cultivated through its operations in Japan, while MDC has a strong track record of providing high-quality homes for more than 50 years in the U.S. Sekisui House will transfer its technology and innovation, including zero-emission homebuilding processes, to expand its offering of high quality, ESG-conscious products and lifestyle packages to MDC customers at a time when demand for such products is growing. Over time, the transaction is expected to provide new opportunities for economic growth and job creation in the U.S.

- **Advances Sekisui House's global vision to "make home the happiest place in the world."** Sekisui House aims to create homes and communities that last for generations and is currently working to solve social issues through the integration of technologies, lifestyle design and services with a focus on health, connectedness and learning as it advances R&D into new technologies with a focus on the residential domain. Through the acquisition of MDC, Sekisui House will aim to achieve its global vision through providing superior quality homes that ensure comfort, security and peace of mind for customers across the U.S.

- **<u>Significant contribution to shareholder value creation for Sekisui House shareholders.</u>** Through the transaction, Sekisui House is expected to be poised for long-term growth potential and profitability. Sekisui House expects to realize savings through the transaction primarily through combined procurement and supply chain to deliver enhanced value for Sekisui House's shareholders.

- **<u>Provides new opportunities for MDC's employees and other stakeholders as part of Sekisui House global portfolio.</u>** As part of Sekisui House, MDC will have access to the advantage of a financially strong parent company to support its growth. MDC's employees and other stakeholders are expected to benefit from this relationship through access to Sekisui House's extensive offering, capabilities and resources, as well as by becoming an essential part of the service of customers and engagement with communities that drive Sekisui House's continued success.

**Transaction Overview**

Subject to and in accordance with the terms and conditions of the merger agreement, which was unanimously approved by the Boards of Directors of both Sekisui House and MDC, a wholly-owned subsidiary of Sekisui House will acquire all outstanding shares of MDC for a price per share of US$ 63.00 in cash. Closing of the acquisition is expected in the first half of 2024, subject to certain conditions, including approval of the merger by MDC's stockholders, regulatory approvals and other customary conditions. The transaction is not subject to a financing condition.

Larry Mizel and David Mandarich and certain of their respective affiliates and estate planning vehicles, who beneficially own approximately 21.2% of MDC's shares, have entered into an agreement, among other things, to vote in favor of the transaction subject to and in accordance with the terms and conditions set forth therein.

**Advisors**

Moelis & Company LLC and Mitsubishi UFJ Morgan Stanley Securities are acting as financial advisors to Sekisui House. Hearthstone, Inc. is acting as real estate advisor to Sekisui House. Morrison Foerster LLP is acting as a legal advisor to Sekisui House.

Vestra Advisors, LLC is acting as exclusive financial advisor to MDC and Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as MDC's legal advisor. Brownstein Hyatt Farber Schreck, LLP is also assisting MDC as a legal advisor.

**The Materially Incomplete and Misleading Proxy Statement**

25.    On March 4, 2024, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC.  The Proxy Statement, which recommends that MDC stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) MDC's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Vestra; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning MDC's Financial Projections*

26.    The Proxy Statement fails to disclose material information concerning the Company's financial projections.

27.    Specifically, the Proxy Statement sets forth that at an October 30, 2023 Board meeting, "the Board, the Company's management and the Company's advisors discussed the Company's business outlook, including valuation, stock performance, future key strategic initiatives and projections."  Proxy Statement at 32.  The Proxy Statement further sets forth that "[d]rafts of the Projections were reviewed with the Board, were approved by the Board for presentation to Vestra for use in its valuation analyses and fairness opinion, and were provided by the Company to Vestra on December 21, 2023 and January 17, 2024."  *Id.* at 49-50.  The Proxy Statement, however, fails to disclose a summary of the projections reviewed at the October 30, 2023 Board meeting, as well as the projections reviewed by the Board and provided to Vestra on December 21, 2023 and January 17, 2024.  The Proxy Statement further fails to disclose a quantification of the changes made to the October 30, 2023 projections and the "drafts of the

Projections" to arrive at the final projections utilized by Vestra in connection with its fairness opinion.

28. Additionally, the Proxy Statement fails to disclose all line items underlying the calculation of Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning Vestra's Financial Analyses*

29. The Proxy Statement fails to disclose material information concerning Vestra's financial analyses.

30. With respect to Vestra's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the Company's estimated real estate inventory (excluding capitalized interest) as of December 31, 2028, used to calculate the terminal values; (ii) the terminal values of the Company; (iii) the inputs and assumptions underlying the discount rate range of 11.7% to 13.2%; (iv) the Company's estimated net debt as of December 31, 2023; and (v) the fully diluted shares outstanding of MDC.

31. With respect to Vestra's *Select Publicly Traded Companies Analysis* and *Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the Company's 2023 book value; (ii) the fully diluted shares outstanding of MDC; and (iii) the individual financial metrics of each company and transaction analyzed, respectively.

32. With respect to Vestra's *Selected Analyst Broker Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

33. With respect to Vestra's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions analyzed; and (ii) the individual premiums observed for each transaction.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction and Company Insiders' Potential Conflicts of Interest*

2

34.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

35.     Specifically, the Proxy Statement fails to disclose the terms of the non-disclosure agreement the Company executed with a potential strategic acquirer on August 30, 2023, including whether it contains a "don't ask, don't waive" standstill provision that is still in effect and operates to preclude the potential strategic acquirer from submitting a topping bid to acquire the Company.

36.     Additionally, the Proxy Statement fails to disclose whether the Board considered forming a special committee of independent directors to negotiate the terms of the Proposed Transaction in light of the 21.2% ownership interest in MDC held by defendants Mizel and Mandarich.

37.     Moreover, the Proxy Statement fails to disclose whether any of Parent's proposals or indications of interest mentioned management retention in the combined company.

38.     In sum, the omission of the above-referenced information renders statements in the "Projections," "Opinion of Vestra Advisors LLC," "Background of the Merger," and "Interests of the Directors and Executive Officers of MDC in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of MDC will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### <u>COUNT I</u>

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and MDC**

39. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. MDC is liable as the issuer of these statements.

41. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

42. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

44. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

45. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

**Claims for Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

47.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of MDC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of MDC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

2

51.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of MDC, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

3

**JURY DEMAND**

Plaintiff demands a trial by jury.


Dated:  March 18, 2024                    **ACOCELLI LAW, PLLC**


By  */s/ Richard A. Acocelli*
_____
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*

4